UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

ONE (1) PIPER CHEYENNE PA-42-1000
AIRCRAFT, BEARING TAIL NUMBER N3SP,
SERIAL NUMBER 42-5527018, INCLUDING
ALL SETS OF KEYS, FLIGHT LOGS AND
MAINTENANCE LOGS;

                Defendant *in Rem*.

_____/

Civil No.
Honorable
Magistrate Judge

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through

BARBARA L. McQUADE, United States Attorney for the Easter District of

Michigan, and JULIE A. BECK, Assistant United States Attorney, and states upon

information and belief in support of this Complaint for Forfeiture *in rem* that:

### JURISDICTION AND VENUE

1.     This is an *in rem* civil forfeiture action brought by the United States of

America pursuant to 49 U.S.C. § 46306 resulting from violations of 49 U.S.C. §§

46306(d)(1) and (2)(C)(i) and (ii), 14 C.F.R. 47.43(a)(2) and (4), 18 U.S.C. §§ 1343,

18 U.S.C. § 1956(a)(2)(A) and 18 U.S.C. § 1957.

2.     The Court has original jurisdiction over this proceeding pursuant to 28

U.S.C. § 1345 as this action is being commenced by the United States of America as Plaintiff.

3.     This Court has jurisdiction over this forfeiture action, pursuant to 28 U.S.C. § 1355(b)(1)(A), as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Eastern District of Michigan.

5.     Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(b), as the defendant *in rem* was found and seized in the Eastern District of Michigan.

## DEFENDANT *IN REM*

6.     The defendants *in rem* in this action consist of the following:

- One (1) Piper Cheyenne PA-42-100 aircraft, bearing tail number N3SP, Serial Number 42-5527018, including all keys, flight logs and maintenance logs, registered to Chase Air, LLC, seized on or about September 17, 2013, from Coleman A. Young International Airport located at 11499 Conner Street, Detroit, Michigan.

2

## STATUTORY BASIS FOR CIVIL FORFEITURE

7.      Seizure and forfeiture of aircraft is governed by Title 49, United States Code, Section 46306, which states that the Administrator of Drug Enforcement or the Commissioner of Customs may seize and forfeit under the customs laws an aircraft whose use is related to a violation of subsection (b) of this section, or to aid or facilitate a violation, regardless of whether a person is charged with the violation.

(2) An aircraft's use is presumed to have been related to a violation of, or to aid or facilitate a violation of-

(A) subsection (b)(1) of this section if the aircraft certificate of registration has been forged or altered;

(B) subsection (b)(3) of this section if there is an external display of false or misleading registration numbers or country of registration;

(C) subsection (b)(4) of this section if-
(i) the aircraft is registered to a false or fictitious person; or
(ii) the application for used to obtain the aircraft certificate of registration contains a material false statement;

(D) subsection (b)(5) of this section if the aircraft was operated when it was not registered under section 44103 of this title; or

(E) subsection (b)(9) of this section if the aircraft has a fuel tank or fuel system that was installed or altered-
(i) in violation of a regulation or requirement of the Administrator of the Federal Aviation Administration; or
(ii) if a certificate required to be issued for the installation or alteration is not carried on the aircraft.

(3) The Administrator of the Federal Aviation Administration, the Administrator of Drug Enforcement, and the Commissioner shall agree

3

to a memorandum of understanding to establish procedures to carry out this subsection.

49 U.S.C. § 46306(d)

## BACKGROUND ON AIRCRAFT REGISTRATION

8.     Any aircraft registered with the Federal Aviation Administration (FAA) must be owned by United States citizens or United States Lawful Permanent Resident aliens.   Other entities that may qualify as a U.S. citizen for purposes of U.S. registered aircraft ownership are as follows:

1) A trust with one or more trustees, of which all trustees must be U.S. citizens;

2) A corporation organized under the law of one of the states of the United States, where the president is a U.S. citizen and two-thirds or more of the board of directors or any other managing officers are U.S. citizens, and where a minimum of 75 percent of the voting interest is owned or controlled by persons who are U.S. citizens;

3) A limited liability company organized under the law of one of the states of the United States, where the president is a U.S. citizen and there two thirds or more of the board of directors and the designated managers are U.S. citizens, and where a minimum of 75 percent of the membership voting interest is owned or controlled by persons who are U.S. citizens;

4

4) A partnership, where each partner is a citizen of the United States.

## DOCUMENTS REQUIRED BY THE FAA TO REGISTER AIRCRAFT

9.     The United States Department of Transportation (USDOT) Federal
Aviation Administration (FAA) is charged with, inter alia, regulating civil aviation
to promote air safety and registering aircraft and recording documents reflecting title
or interest in aircraft and their parts.

10.     In order to register an aircraft, an applicant must send the following
documents to the Aircraft Registration Branch located in Oklahoma:

1) An Aircraft Registration Application (AC Forms 8050-1);

2) Evidence of ownership (FAA Form AC 8050-2); and

3) Registration fee made payable to the FAA.

11.     According to the FAA, the purchaser is responsible for submitting the
Aircraft Registration Application.   Upon completion of a sale, if the purchaser
intends to operate the aircraft, the purchaser must submit to the FAA Aircraft
Registration Branch, US DOT FAA Form ACC 8050-1.   US DOT FAA Form ACC
8050-1 is a carbon copy form which consists of a bottom pink copy, and a top white
copy.   Upon the sale, if the purchaser submits the white top copy to the registration
branch, the purchaser is then authorized to lawfully operate the aircraft for a period
not to exceed 90 days.   The bottom pink copy of form ACC 8050-1 is maintained in

5

the aircraft as proof of a pending registration application with FAA.   An aircraft

may not be operated unless this form is submitted. Below the signature block of this

form the following words are printed, "Pending receipt of the Certificate of Aircraft

Registration, the aircraft may be operated for a period not in excess of 90 days,

during which time the PINK copy of this application must be carried in the aircraft."

The knowing and willful operation of an aircraft, the attempt, or causing one to be

operated, without filing the AC 8050-1 form with the FAA is a Federal Felony under

U.S. laws.

12.     Based on this documentation, the FAA determines whether the

eligibility requirements for a certificate of registration have been met.   If so, the

FAA will issue a certificate of registration to the applicant.

13.     An aircraft legally registered in the United States will be given a

designated identification number commonly referred to as a tail number.   All U.S.

registered aircraft are designated by the prefix "N".   This "N" registration must be

displayed on the aircraft and is often painted on the tail of the aircraft.

## FACTUAL BACKGROUND

14.     The facts supporting this evidentiary determination include, but are not

limited to, the following:

      a.      On or about July 2012, information was received that a Piper

Cheyenne PA-42-1000 aircraft bearing tail number N3SP, with Serial

Number 42-5527018 (hereafter referred to as "N3SP") might be operating

without proper FAA certification.

      b.     Information received from the FAA showed that aircraft N3SP

was purchased on March 14, 2012, by A&E Leasing, LLC, located in

Wilmington, Delaware, and registered on April 5, 2012. According to FAA

Form 8050-1, the manager of A&E Leasing, LLC is Charles Chase

("CHASE").

      c.     Investigation revealed that A&E Leasing, LLC was formed in

Delaware on January 13, 2012, and as of April 2013 was still listed as being

active. Steven Plomaritis was listed as the sole member of A&E Leasing,

LLC as of April 2013, with an address in Grosse Pointe Shores, Michigan.

The official documents received from the State of Delaware did not show

CHASE as a member of A&E Leasing, LLC.

      d.     When CHASE signed the FAA 8050-1 as a "member" of A&E

Leasing, LLC, he made a materially false statement. A "Statement in

support of registration of a United States Civil Aircraft in the name of a

limited liability company" was also filed with the FAA by CHASE. On this

statement, CHASE listed himself as a member of A&E Leasing, LLC and

7

signed the document.   This, too, is a materially false statement filed with the FAA.

e.      In May 2013, information was received that N3SP was in the process of being sold to an unknown person/entity in the Country of Mexico.

f.      Jetstream Escrow & Title Service, Inc. ("JETSTREAM") was identified as the firm facilitating the sale of N3SP.

g.      Documentation for the sale of N3SP revealed that on May 17, 2013, an Offer to Purchase N3SP was completed and signed between Steven Plomaritis of A&E Leasing, LLC (Seller) and Charles CHASE (Buyer), for the price of $1,200,000.

h.      Also on May 17, 2013, an Offer to Purchase was completed and signed between CHASE (Seller) and Sebastian Vega, Comercalizadora Rami, S.A. de C.V. (Buyer) for the price of $1,300,000.00.

i.      An internet search, including utilizing a Mexican based search engine, for information on Sebastian Vega and Comercalizadora Rami, S.A. de C.V. provided no results.   Legitimate reputable companies having the financial ability to purchase aircraft valued in excess of $1,000,000 typically have online references, reviews, endorsements, or a business website to promote its operation.

8

    j.     An escrow sheet obtained from JETSTREAM indicated that a total of $1,300,000 was deposited in escrow for the purchase of N3SP.   The deposits were received via wire transfers from Banco Base in San Pedro Garza Garcia, Nuevo Leon, Mexico. There were a total of five (5) wire transfers from a company identified as Cronoss Servicios Estrategicos De Negocios SA DE ("CRONOSS") from May 20, 2013 through May 24, 2013, into the JETSTREAM escrow account for the purchase of N3SP.   The wire transfers are described as follows:

        (1)    $242,228.50 on May 20, 2013 from CRONOSS account ending in 4537;

        (2)    $120,967.74 on May 21, 2013 from CRONOSS account ending in 3584;

        (3)    $198,886.24 on May 23, 2013 from CRONOSS account ending in 3584;

        (4)    $187,123.87 on May 24, 2013 from CRONOSS account ending in 4537; and

        (5)    $550,793.65 on May 24, 2013 from CRONOSS account ending in 4537.

    l.     The $1,300,000 received by JETSTREAM for the purchase of N3SP was received from two separate CRONOSS bank accounts.   None of the wire transfers were from the company Comercalizadora Rami, S.A. de C.V., which was listed on the Offer to Purchase.

m.      According to the owner of JETSTREAM, LEDA FRANCIS, who is also a licensed escrow agent, the above method of multiple wire transfers occurring over multiple days, from more than one bank account is a highly unusual way to purchase an aircraft.   Typically, the purchase of an aircraft occurs with one transfer of funds, from one business bank account, and the buyer of the aircraft is making the transfer of funds.

n.      Based on training and experience, agents are aware that drug traffickers often purchase aircraft with multiple wire transfers from different, unrelated, and often foreign sources to further their illicit activity.

o.      On or about May 29, 2013 CHASE contacted JETSTREAM to advise that N3SP should now be registered to Carlos Leasing, LLC, of Wilmington, Delaware.   JETSTREAM emailed CHASE a copy of a "Statement in support of registration of a United States Civil Aircraft in the name of a limited liability company", which included instructions for its completion and return to Jetstream.

p.      The form, which listed Xavier De La Fuente (manager) and Carlos Huerta-Martinez (member), was returned complete with the exception of the signature certifying that the applicant was a U.S. citizen. JETSTREAM contacted CHASE to inquire about the citizenship of Carlos

10

Leasing, LLC and CHASE advised that "Xavier is US the other member I'm not sure.   They fly charter between Texas and Mexico."

q.    Agents determined that Carlos Huerta-Martinez is a Mexican citizen; however, agents were unable to positively identify Xavier De La Fuente.

r.    FAA regulations state that applicants for aircraft registration must be citizens of the United States and at least two-thirds of the managers, officers or managing members must qualify as citizens of the United States, and at least 75% of the voting interest or units must be owned or controlled by persons who qualify as a citizen of the United States.

s.    Even if Xavier De La Fuente qualified as a U.S. citizen under 49 U.S.C. §§ 40101(a)(15) or 40102(a)(15), Carlos Leasing, LLC would not qualify to register an aircraft in the United States, because Carlos Huerta-Martinez is not a U.S. citizen.   Regulation requires that two-thirds of the managers, officers or managing members must qualify as citizens of the United States.

t.    JETSTREAM advised CHASE that N3SP could not be registered to Carlos Leasing, LLC due to the citizenship requirement.

u.    On or about May 31, 2013, a document titled "Aircraft Technical

11

Acceptance" was signed by a legal representative of Comercializadora rem, S.A. De C.V. and stated that Comercializadora Remi, S.A. de C.V. had completed its pre-purchase inspection satisfactorily, accepted the aircraft, and authorized the release of funds held in escrow by JETSTREAM, to the seller, CHASE.

  v.  However, also on May 31, 2013, JETSTREAM notified the parties involved that it could not release the funds held in escrow since the depositing party, Cronoss Servicios Estrategicos De Negocios SA DE was not the same company as the contracted buying party, Comercalizadora Rami, S.A. de C.V. It was also noted that there was no FAA Bill of Sale.

  w.  On or about June 5, 2013, JETSTREAM received correspondence on company letterhead from CRONOSS, which advised JETSTREAM to register N3SP in the name of C&R Enterprises.   There were no details provided for C&R Enterprises; therefore, JETSTREAM emailed CRONOSS to request further information.

  x.  Approximately five (5) days later, CHASE emailed JETSTREAM with an address and contact person for C&R Enterprises. When JETSTREAM contacted C&R Enterprises CEO, Carmen Villaurritia ("VILLAURRITIA") to instruct her on the completion of the registration

12

application, VILLAURRITIA advised that she had "no relations with the deal" and had not authorized any person to register an aircraft in the name of C&R Enterprises.

y.    VILLAURRUTIA filed paperwork with JETSTREAM removing the C&R Enterprises company name from the registration of N3SP. On or about June 27, 2013, JETSTREAM filed documentation with FAA to set aside the sale of N3SP to C&R Enterprises.

z.    When Homeland Security Investigations ("HSI") agents spoke with CHASE, he advised that he was the broker and selling agent for N3SP. The sale was initiated through a broker named Carlos in Mexico.   Carlos was later identified as Carlos Huerta-Martinez ("HUERTA-MARTINEZ").

aa.    CHASE further stated that he was advised to register N3SP to C&R Enterprises.   No buyers came to Michigan to perform a customary pre-buy inspection of N3SP.

bb.    CHASE flew N3SP from Detroit, Michigan to San Antonio, Texas, where he refueled the plane and continued on to Monterrey, Mexico. CHASE was then advised to fly the plane to a remote part of the airfield and exit the plane.   With the exception of HUERTA-MARTINEZ, CHASE never met any other persons on his trip to Mexico.

13

cc.    Through training and experience, agents know that it is customary and essential to conduct a pre-buy inspection of an aircraft.   N3SP is more than (25) years old, has age considerations, and is an extremely complex aircraft.   Typically, a pre-buy inspection includes inspection of the airframe, engine, logbooks and avionics.   The only inspection of N3SP was conducted by HUERTA-MARTINEZ.

dd.    HSI contacted FAA to inquire about the FAA certification of HUERTA-MARTINEZ and was advised that HUERTA-MARTINEZ is not an airframe or power plant mechanic.   HSI and FAA agents believe that the purchase of an aircraft without the customary and essential pre-buy inspection is highly unusual, especially in consideration of the monetary value of the aircraft.

ee.    On or about August 22, 2013, N3SP was re-registered to Chase Air, Inc. (CHASE AIR).   CHASE AIR was formed on August 16, 2013. CHASE AIR signed and filed the FAA form 8050-1 stating "the above aircraft is owned by the undersigned applicant", which is a violation of 49 U.S.C. § 46306.   Additionally, 14 C.F.R. 47.43, states that the registration of an aircraft is invalid if, at the time it is made, the applicant is not the owner.

ff.    CHASE was contacted by HSI to inform him of the registration

14

violation.   CHASE admitted that he was not the owner of N3SP, but that he

had registered N3SP in his new company name as a way to get the aircraft

back into the United States.

gg.   In September 2013, CHASE spoke with an HSI agent and

advised that he had been in contact with the "owner" of N3SP in Mexico who

had asked when the plane would be returned to Monterrey.   CHASE was

advised to have the Mexican owners contact the HSI agent directly.

hh.   A caller identifying himself as Mike Sanchez ("SANCHEZ")

contacted an HSI agent.   SANCHEZ advised that he was a translator for

CRONOSS and wanted to know when N3SP would be returned to Mexico.

ii.   When SANCHEZ was asked questions about the owners, the

address and a telephone number for CRONOSS, he did not have that

information.   Approximately two (2) days later, SANCHEZ contacted the

HSI agent to provide the address and telephone number for CRONOSS.

SANCHEZ further stated that CRONOSS provides advice to people

regarding home construction.

jj.   At first, an attempt was made to register N3SP unlawfully to a

non-U.S. citizen corporation, Carlos Leasing, LLC.   When that registration

scheme was unsuccessful, the purchaser next attempted to register N3SP to

15

C&R Enterprises, an innocent party located in the State of Texas.   In August

2013, N3SP was then re-registered to CHASE AIR, even though CHASE AIR

is not the legal owner of the aircraft.   Furthermore, five (5) separate wire

transfers from two (2) different accounts in Mexico were utilized to send

payment to the United States for the purchase of N3SP.

## CLAIM

15.     The United States hereby incorporates by reference, repeats and

re-alleges each and every allegation set forth in Paragraphs 1 through 14 above,

including all subparagraphs therein.

16.     The Defendant Property is forfeitable to the United States pursuant to

49 U.S.C. § 46306(d) as it constitutes property whose use is related to a violation of,

or to aid or facilitate in a violation of Title 49 of the United States Code, Sections

46306(b), (2)(C)(i) and (ii).

## JURY DEMAND

Plaintiff United States of America respectfully requests a trial by jury in this

case.

## RELIEF

WHEREFORE Plaintiff, the United States of America, respectfully requests

that a Warrant for Arrest of the Defendant Property be issued; that due notice be

16

given to all interested parties to appear and show cause why the forfeiture should not

be decreed; that judgment be entered declaring that the Defendant Property be

condemned and forfeited to the United States of America for disposition according

to the law; and that the United States of America be granted such other further relief

as this Court may deem just and proper, together with the costs and disbursements of

this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

JONATHAN J.C. GREY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9116
jonathan.grey@usdoj.gov
[Illinois Bar No. 6292918]

Dated:   May 1, 2014

17

## **VERIFICATION**

I, Scott Weigman, state that I am a Special Agent with Homeland Security Investigations (HSI). I have read the foregoing Complaint for Forfeiture and assert under penalty of perjury of the laws of the United States that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers and agents.

Scott Weigman, Special Agent
Homeland Security Investigations (HSI)

Dated: 5/1/14